**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON**

| | | |
|---|---|---|
| ERIN L. CLINE, | : | Case No. 3:20-cv-128 |
| Plaintiff, | : | |
| vs. | : | District Judge Thomas M. Rose |
| | : | Magistrate Judge Peter B. Silvain, Jr. |
| COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, | : | |
| Defendant. | : | |

**REPORT AND RECOMMENDATIONS[1]**

Plaintiff Erin L. Cline brings this case challenging the Social Security Administration's denial of her applications for period of disability, Disability Insurance Benefits, and Supplemental Security Income. The case is before the Court upon Plaintiff's Statement of Errors (Doc. #17), Defendant's Memorandum in Opposition (Doc. #19), and the administrative record (Doc. #14).

**I.     Background**

The Social Security Administration provides Disability Insurance Benefits and Supplemental Security Income to individuals who are under a "disability," among other eligibility requirements. *Bowen v. City of New York,* 476 U.S. 467, 470 (1986); *see* 42 U.S.C. §§ 423(a)(1), 1382(a). The term "disability" encompasses "any medically determinable physical or mental impairment" that precludes an applicant from performing "substantial gainful activity." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *see Bowen,* 476 U.S. at 469-70.

In the present case, Plaintiff applied for benefits on February 16, 2017, alleging disability due to several impairments, including seizure disorder, idiopathic hypersomnia, migraines, and

---

[1] Attached is a NOTICE to the parties regarding objections to this Report and Recommendations.

anxiety disorder/panic disorder with agoraphobia. After Plaintiff's applications were denied initially and upon reconsideration, she requested and received a hearing before Administrative Law Judge (ALJ) Gregory M. Beatty. Thereafter, the ALJ issued a written decision, addressing each of the five sequential steps set forth in the Social Security Regulations. *See* 20 C.F.R. §§ 404.1520, 416.920. He reached the following main conclusions:

> Step 1: Plaintiff has not engaged in substantial gainful employment since May 1, 2012.
>
> Step 2: She has the severe impairments of seizure disorder, idiopathic hypersomnia, migraines, and anxiety disorder/panic disorder with agoraphobia.
>
> Step 3: She does not have an impairment or combination of impairments that meets or equals the severity of one in the Commissioner's Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1.
>
> Step 4: Her residual functional capacity, or the most she could do despite her impairments, *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002), consists of "a full range of work at all exertional levels" with many nonexertional limitations. Specifically, Plaintiff "can climb ramps and stairs occasionally; never climb ladders, ropes, or scaffolds; [Plaintiff] can never work at unprotected heights, around moving mechanical parts, or operating a motor vehicle; avoid concentrated exposure to humidity and wetness, dust, odors, fumes, pulmonary irritants, and extreme cold and heat; is able to perform simple, routine tasks; is able to make simple work-related decisions; is able to interact with supervisors and co-workers occasionally; and no interaction with the public."
>
> She is unable to perform any of her past relevant work.
>
> Step 5: She could perform a significant number of jobs that exist in the national economy.

(Doc. #14, *PageID* #s 97-105). Based on these findings, the ALJ concluded that Plaintiff was not under a benefits-qualifying disability. *Id.* at 105.

The evidence of record is adequately summarized in the ALJ's decision (Doc. #14, *PageID* #s 97-105), Plaintiff's Statement of Errors (Doc. #17) and Defendant's Memorandum in

Opposition (Doc. #19). To the extent that additional facts are relevant, they will be summarized in the discussion section below.

## II. Standard of Review

Judicial review of an ALJ's decision is limited to whether the ALJ's finding are supported by substantial evidence and whether the ALJ applied the correct legal standards. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (citing *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)); *see Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007). Substantial evidence is such "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014) (citing *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234, 241 (6th Cir.2007)). It is "less than a preponderance but more than a scintilla." *Id.*

The second judicial inquiry—reviewing the correctness of the ALJ's legal analysis—may result in reversal even if the ALJ's decision is supported by substantial evidence in the record. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009). Under this review, "a decision of the Commissioner will not be upheld where the [Social Security Administration] fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen*, 478 F.3d at 746 (citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004)).

## III. Discussion

Plaintiff contends that the ALJ failed to properly evaluate the opinion of Plaintiff's treating physician, Dr. Richard Byers. In contrast, the Commissioner maintains that the ALJ properly discounted the opinion of Dr. Byers and that substantial evidence supports the ALJ's decision.

### A. Medical Opinions

Social Security Regulations require ALJs to adhere to certain standards when weighing medical opinions. "Key among these is that greater deference is generally given to the opinions of treating physicians than to those of non-treating physicians, commonly known as the treating physician rule." *Rogers,* 486 F.3d at 242 (citations omitted). The rule is straightforward:

> Treating-source opinions must be given "controlling weight" if two conditions are met: (1) the opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques"; and (2) the opinion "is not inconsistent with the other substantial evidence in [the] case record."

*Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (quoting in part 20 C.F.R. § 404.1527(c)(2)); *see Gentry*, 741 F.3d at 723.[2]

If the treating physician's opinion is not controlling, "the ALJ, in determining how much weight is appropriate, must consider a host of factors, including the length, frequency, nature, and extent of the treatment relationship; the supportability and consistency of the physician's conclusions; the specialization of the physician; and any other relevant factors." *Rogers*, 486 F.3d at 242 (citing *Wilson*, 378 F.3d at 544).

The Regulations also require ALJs to provide "good reasons" for the weight placed upon a treating source's opinions. *Wilson*, 378 F.3d at 544. This mandatory "good reasons" requirement is satisfied when the ALJ provides "specific reasons for the weight placed on a treating source's medical opinions." *Id*. (quoting Soc. Sec. R. 96-2p, 1996 WL 374188, at *5 (Soc. Sec. Admin. July 2, 1996)). The goal is to make clear to any subsequent reviewer the weight given and the

---

[2] On January 18, 2017, the Social Security Administration promulgated "Revisions to Rules Regarding the Evaluation of Medical Evidence," which, among other things, served to eliminate the treating physician rule for claims filed on or after March 27, 2017. *See* 82 Fed. Reg. 5844, 2017 WL 168819 (Jan. 18, 2017)(to be codified at 20 C.F.R. pts. 404, 416). Since Plaintiff's applications were filed prior to the effective date of March 27, 2017, the treating physician rule is still applicable to her claims.

4

reasons for that weight. *Id*. Substantial evidence must support the reasons provided by the ALJ. *Id*.

In this case, Plaintiff's treating physician, Dr. Byers, found that Plaintiff's recurrent seizures, sleep disorder, and migraines would likely cause Plaintiff to be off task for more than 25 percent of the workday and to miss more than 25 workdays a month. (Doc. #14, *PageID* #770). Dr. Byers also opined that these medical conditions would limit Plaintiff's ability to sit to one hour at a time for a total of two hours a day and her ability to stand and walk to less than two hours a day. *See id*. Dr. Byers also prohibited Plaintiff from climbing, crouching, driving, moving mechanical parts, and being exposed to unprotected heights or extreme heat. *Id.* at 772.

In his review, the ALJ determined that Dr. Byers' opinions were not entitled to "controlling weight," but rather afforded "little weight" to his opinions. *Id.* at 103-104. In reaching this conclusion, the ALJ held that Dr. Byers' opinions were "inconsistent with the medical record as a whole," specifically citing to Plaintiff's "largely unremarkable diagnostic and clinical findings, her limited and conservative treatment history for her physical and mental health issues, and her alleged frequency of seizures and severity of her sleep difficulties[.]" *Id.* at 104. As evidence of these inconsistencies, the ALJ pointed to a 2012 EEG study that "was normal, without evidence of epileptiform discharges, focal changes, or other abnormalities seen" as well as to a treatment record from 2018 that showed, among other things, "no current seizure activity." *Id.* at 102. The ALJ also critiqued Dr. Byers for imposing extreme limitations on Plaintiff with "little supporting evidence or explanation" beyond Plaintiff's "diagnoses and subjective allegations[.]" *Id.* at 104.

The ALJ's justifications for discounting Dr. Byers' opinions are flawed for several reasons. While the ALJ acknowledged that Dr. Byers served as Plaintiff's "treating source opinion" and addressed the issue of controlling weight, the ALJ did not properly analyze the opinion under the

5

two conditions of the treating physician rule.  That is, the ALJ failed to discuss whether Dr. Byers' opinions are (1) well supported by medically acceptable clinical and laboratory diagnostic techniques and (2) not inconsistent with the other substantial evidence in the case record.  Instead, the ALJ improperly reduced the two-step evaluation procedure mandated by the Regulations into solely consideration of the remaining factors in the Regulations, such as the "supportability" and "consistency" factors.  *See* 20 C.F.R. § 404.1527(c)(1)-(6).  This constitutes error because the "supportability" and "consistency" factors, along with the others listed in the Regulations, "are properly applied only *after* the ALJ has determined that a treating-source opinion will not be given controlling weight." *Gayheart*, 710 F.3d at 376 (emphasis added) (citation omitted).  The ALJ's focus on the factors "hinders a meaningful review of whether the ALJ properly applied the treating physician rule that is the heart of this regulation." *Id.* (citing *Wilson*, 378 F.3d at 544).

Further, by ignoring the two-stage analysis of the treating physician rule, the ALJ also failed to satisfy his obligation to "be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." Soc. Sec. R. 96-2p, 1996 WL 374188 at *5 (July 2, 1996); *see also Wilson*, 378 F.3d at 544-45 (citing *Halloran v. Barnhart*, 362 F.3d 28, 32-33 (2d Cir. 2004)) ("The requirement also ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule.").

By collapsing the analysis of Dr. Byers' opinions into one step, the ALJ failed to evaluate his opinions under the correct legal criteria.  "Because the reason-giving requirement exists to 'ensur[e] that each denied claimant receives fair process,' we have held that an ALJ's 'failure to follow the procedural requirement of identifying the reasons for discounting the opinions and for explaining precisely how those reasons affected the weight' given '*denotes a lack of substantial*

6

*evidence*, even where the conclusion of the ALJ may be justified based upon the record.'" *Blakely*, 581 F.3d at 407 (quoting *Rogers*, 486 F.3d at 243).

Moreover, substantial evidence does not support the ALJ's decision to disregard Dr. Byers' opinion based on his conclusion that Plaintiff's medical record revealed "unremarkable diagnostic and clinical findings" at odds with Dr. Byers' opinion. It is well-settled that "an ALJ 'may not substitute his own medical judgment for that of the treating physician where the opinion of the treating physician is supported by the medical evidence.'" *Simpson v. Comm'r of Soc. Sec.*, 344 F. App'x 181, 194 (6th Cir. 2009) (quoting *Meece v. Barnhart*, 192 F. App'x. 456, 465 (6th Cir. 2006)); *see also Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996) (stating "ALJs must not succumb to the temptation to play doctor and make their own independent medical findings").

In this case, the ALJ chose to substitute Dr. Byers' medical judgment for his own when he discounted the years of treatment, diagnoses, and findings by Dr. Byers. Indeed, the ALJ's statement that the diagnostic and clinical findings in Plaintiff's medical records were "unremarkable" is a medical determination that he is not qualified to make. Here, his reliance on specific examples of the "inconsistent objective evidence," including the presence of a single EEG with "normal" results and a 2018 appointment where Plaintiff did not display "current seizure activity" fails to carry the significance that the ALJ has assigned to it. While these facts may represent evidence that is not necessarily *consistent* with a diagnosis of seizure disorder or idiopathic hypersomnia, the fact that a single EEG does not display ictal abnormalities or that a patient does not have a seizure during a medical appointment is insufficient, in the absence of a medical opinion stating otherwise, to support a finding that these conditions are *inconsistent* with, or contradictory to, the diagnoses of a seizure disorder or idiopathic hypersomnia. *See* Soc. Sec. R. 96-2p, 1996 WL 374188, at *3 (Soc. Sec. Admin. July 2, 1996)) (defining the term "[n]ot

7

inconsistent" and explaining that treating source opinions need not be consistent with all of the other evidence in the record; rather, the opinion must simply be "not inconsistent," or contradictory to, the other substantial evidence). In short, by substituting Dr. Byers' assessment of Plaintiff's symptoms with his own estimation of whether certain clinical findings met a necessary threshold for a diagnosis, the ALJ exceeded the scope of his review.

Likewise, the ALJ's decision to discredit Dr. Byers for imposing extreme limitations on Plaintiff with "little supporting evidence or explanation" beyond Plaintiff's "diagnoses and subjective allegations" is inappropriate under these circumstances. With regard to a physician's reliance on an individual's subjective report of symptoms, the Sixth Circuit has explained:

> As a general matter, doctors in good faith surely may rely on what their patients tell them have been their symptoms between one visit and another. And surely they may make reasoned assessments (again as a general matter) about the seriousness of a disease based on an objectively-supported diagnosis of the disease, the symptoms reported to them by their patients, the progression of the disease and their medical understanding of the disease.

*Sharp v. Barnhart*, 152 F. App'x 503, 508-9 (6th Cir. 2005) (citing 20 C.F.R. § 404.1528). *See also Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005) (finding that a treating doctor's estimate concerning the frequency of epileptic seizures should have been credited by the ALJ even though the patient had not visited a doctor each time a seizure had occurred); *Davis-Atkinson v. Barnhart*, 87 F. App'x 766 (2d Cir. 2004) (finding that upon remand the Commissioner needed to reconsider in greater detail, among other things, a treating physician's opinion—based on patient visits occurring every three months—that the patient suffered from "non-epileptic seizures one to two times a day").

Here, the record reflects that Dr. Byers has been treating Plaintiff since 1998, (Doc. #14, *PageID* #770), and was her treating physician in 2012 when her seizures and hypersomnia first began. *Id.* at 474-479. Plaintiff continued to receive treatment from Dr. Byers for these diagnoses

8

from 2012 through at least the time of her hearing before the ALJ in 2019. *Id.* at 124, 430-446, 465, 474-585, 661-768, 770.  At these visits, Plaintiff consistently reported symptoms related to her seizure disorder and idiopathic hypersomnia, and Dr. Byers continuously found her reported symptoms to support these diagnoses. *Id.* at 433, 435, 442-444, 467-468, 479-480, 491, 511, 534, 539, 551, 576, 584, 651-653.  Given the episodic nature of these diagnoses, an individual need not seek treatment for every attack in order for an ALJ to credit a treating physician's opinion concerning the frequency of attacks. *See Clark v. Barnhart*, 64 F. App'x 688, 691-92 (10th Cir. 2003) (holding that (1) ALJ's rejection of plaintiff's complaints based on the frequency of treatments by physicians was not supported when plaintiff had seen her treating physicians ten times over a year and a half and complained of fatigue during those visits, and (2) plaintiff's seeking treatment only when her multiple sclerosis flared up was consistent with the episodic nature of the illness).

Additionally, the ALJ's emphasis on Plaintiff's "limited and conservative treatment history" do not detract from the significance that Dr. Byers placed on Plaintiff's reported symptoms.  Although the failure to seek treatment may serve as a reason to discount an individual's account of the alleged frequency or severity of symptoms, *see Strong v. Soc. Sec. Admin,* 88 F. App'x 841, 846 (6th Cir. 2004), the relevant Ruling instructs that an ALJ "will not find an individual's symptoms inconsistent with the evidence in the record on [the] basis of [lack of treatment] without considering possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints." Soc. Sec. R. 16-3p, 2017 WL 5180304, at *9 (Soc. Sec. Admin. March 28, 2016).  Notably, the inability to afford treatment is a reason expressly contemplated by the Ruling, *see* 2017 WL 5180304, at *10 ("When we consider

9

the individual's treatment history, we may consider ... [a]n individual may not be able to afford treatment[.]").

In this case, Plaintiff testified before the ALJ that her lack of insurance prevented her from seeking regular treatment. (Doc. #14, *PageID* #124). Additionally, her treatment records make numerous references to her lack of insurance and even specify instances where her medications were discontinued due to the "[c]ost of medication." *Id.* at 441, 443, 581. Dr. Byers also recognized this limitation, noting in a 2015 treatment record that Plaintiff "needs multiple studies and probably treatments" but that "[d]ue to lack of insurance[,] she cannot afford this." *Id.* at 444. Thus, the ALJ's decision to discount Dr. Byers' opinion on the basis that Plaintiff had a "limited and conservative treatment history" without considering the impact her financial circumstances had on her ability to pursue a more progressive course of treatment also constitutes reversible error.

Accordingly, for the above reasons, Plaintiff's Statement of Errors is well taken.

**B.     Remand**

A remand is appropriate when the ALJ's decision is unsupported by substantial evidence or when the ALJ failed to follow the Administration's own regulations and that shortcoming prejudiced the plaintiff on the merits or deprived the plaintiff of a substantial right. *Bowen*, 478 F.3d at 746. Remand may be warranted when the ALJ failed to provide "good reasons" for rejecting a treating medical source's opinions, *see Wilson*, 378 F.3d at 545-47; failed to consider certain evidence, such as a treating source's opinions, *see Bowen*, 478 F.3d at 747-50; failed to consider the combined effect of the plaintiff's impairments, *see Gentry*, 741 F.3d at 725-26; or failed to provide specific reasons supported by substantial evidence for finding the plaintiff lacks credibility, *see Rogers*, 486 F.3d at 249.

10

Under sentence four of 42 U.S.C. § 405(g), the Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." *Melkonyan v. Sullivan*, 501 U.S. 89, 99 (1991). Consequently, a remand under sentence four may result in the need for further proceedings or an immediate award of benefits. *E.g., Blakley*, 581 F.3d at 410; *Felisky v. Bowen*, 35 F.3d 1027, 1041 (6th Cir. 1994). The latter is warranted where the evidence of disability is overwhelming or where the evidence of disability is strong while contrary evidence is lacking. *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994).

A judicial award of benefits is unwarranted in the present case because the evidence of disability is not overwhelming, and the evidence of disability is not strong while contrary evidence is lacking. However, Plaintiff is entitled to an Order remanding this case to the Social Security Administration pursuant to sentence four of § 405(g) due to the problems discussed above. On remand, the ALJ should be directed to evaluate the evidence of record, including the medical source opinions, under the applicable legal criteria mandated by the Commissioner's Regulations and Rulings and by case law; and to evaluate Plaintiff's disability claim under the required five-step sequential analysis to determine anew whether Plaintiff was under a disability and whether her applications for Disability Insurance Benefits and Supplemental Security Income should be granted.

**IT IS THEREFORE RECOMMENDED THAT**:

1. The Commissioner's non-disability finding be vacated;

2. No finding be made as to whether Plaintiff Erin L. Cline was under a "disability" within the meaning of the Social Security Act;

3. This matter be **REMANDED** to the Social Security Administration under sentence four of 42 U.S.C. § 405(g) for further consideration consistent with

        this Report and Recommendations, and any decision adopting this Report and Recommendations; and

4.     The case be terminated on the Court's docket.


July 19, 2021                                         *s/ Peter B. Silvain, Jr.*
                                                                         Peter B. Silvain, Jr.
                                                                         United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendations. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).